O

# United States District Court
# Central District of California

| | |
|---|---|
| GRACE COLLINS,<br><br>  Petitioner,<br><br>  v.<br><br>RICHARD RIONDA DEL CASTRO, ET AL.,<br><br>  Respondents. | Case № 2:21-CV-06197-ODW (GJSx)<br><br>**ORDER GRANTING PETITION TO CONFIRM ARBITRATION AWARD [1] AND DENYING PETITION TO VACATE ARBITRATION AWARD [18]** |

## I.   INTRODUCTION

Before the Court are Petitioner Grace Collins's ("Collins") Petition to Confirm Arbitration Award (Pet. Confirm, ECF No. 1) and Respondents Richard Rionda del Castro ("Rionda"), Hannibal Production, Inc. ("HPI"), and Speed Kills Production, Inc.'s ("SKP") (collectively, "Respondents") Motion to Vacate Arbitration Award (Mot. Vacate, ECF No. 18). For the reasons discussed below, the Court **GRANTS** the Petition to Confirm the Arbitration Award and **DENIES** the Motion to Vacate.[1]

---

[1] Having carefully considered the papers filed in connection with the Petitions, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

The present action is the latest in a long-running legal dispute between Collins, on the one hand, and Rionda and his companies HPI and SKP, on the other. The legal dispute arises from a loan agreement (the "Agreement") between Collins and HPI. (*See* Pet. Confirm ¶¶ 13–14.) The Agreement provided that Collins would lend $245,000 to HPI to produce the film *Speed Kills*. (Pet. Confirm Ex. B ("Loan Agreement" or "Agreement") ¶ 1, ECF No. 1-1.) Both Collins and HPI executed the Agreement. (*Id.* at 35.[2]) Rionda executed the Agreement in his capacity as president of HPI, not as an individual. (*See id.*) The Agreement included an arbitration clause, which required that "[a]ny dispute, controversy or claim arising out of or relating to the enforcement, interpretation or alleged breach of this agreement, including without limitation tort claims and arbitrability issues, shall be submitted to and resolved by binding arbitration in Los Angeles, California." (*Id.* ¶ 20.)

The loan matured on April 5, 2018, and remains unpaid. (Pet. Confirm Ex. A ("Final Award" or "Award") at 21, ECF No. 1-1.) On October 11, 2018, Collins sued Respondents in Maryland for defaulting on the loan and sought repayment and damages. (Pet. Confirm ¶ 24.) Respondents removed the action to federal court and successfully transferred it to the Central District of California. (*See* Mot. Vacate Exs. 2, 4, ECF No. 18-1.) Respondents then moved to compel Collins to arbitrate the loan dispute, and Collins acquiesced. (*See id.* Ex. 5 ("Pet. Compel") at 70, ECF No. 18-1; Pet. Confirm ¶ 26.)

Once Collins initiated arbitration with the American Arbitration Association ("AAA"), Rionda and SKP moved to dismiss Collins's arbitration action as against them on the grounds that Rionda and SKP had not consented to arbitration. (*See* Mot. Vacate Ex. 9 ("Arb. Mot. Dismiss") at 92, ECF No. 18-1.) The Arbitrator found that Rionda and SKP were equitably estopped from denying the arbitrability of Collins's

---

[2] The Court refers to the pagination in the ECF docket header for all Exhibit citations, including the Final Award and the Agreement.

claims. (Pet. Confirm ¶ 29; Mot. Vacate Ex. 9 ("Arb. Order No. 2") at 100, ECF No. 18-1.) Accordingly, the Arbitrator concluded that he had jurisdiction over Collins's claims against each of the Respondents, including Rionda and SKP, for breach of the Loan Agreement. (Arb. Order No. 2 at 100.)

Several months later, Collins filed a First Amended Complaint with the AAA, asserting an alter ego claim against Respondents. (Mot. Vacate Ex. 10a, Ex. 1 ("Arb. First Am. Compl.") ¶¶ 6–12, ECF No. 18-2.) Respondents objected to Collins's alter ego allegation, arguing that it exceeded the scope of the arbitration clause and would exceed the Arbitrator's authority. (Mot. Vacate Ex. 10b at 105–06, ECF No. 18-2.) The Arbitrator concluded that the arbitration clause was sufficiently broad to encompass Collins's alter ego claims. (Mot. Vacate Ex. 11 ("Arb. Order No. 10") at 127–28, ECF No. 18-2.) Further, because the parties had agreed to arbitrate arbitrability under the Agreement, the Arbitrator reasoned it was within his authority to determine the arbitrability of Collins's alter ego claim against Rionda. (*Id.*) The Arbitrator concluded that Rionda must arbitrate Collins's alter ego claim on the grounds of equitable estoppel. (*Id.* at 128.) Thus, the Arbitrator held he had jurisdiction over Collins's claims against Respondents. (*See id.*)

The parties presented their case at hearing over the course of four days in February 2021. (Award 5.) On May 7, 2021, the Arbitrator issued a twenty-six page Final Award. (*See id.* at 27.) The Arbitrator held that Collins prevailed on her breach of contract claim and was entitled to reasonable attorneys' fees and costs. (*Id.* at 21.) Further, the Arbitrator held that Rionda was co-liable under a single enterprise alter ego theory for the obligations of HPI and SKP under the Loan Agreement. (*Id.* at 25.) Accordingly, the Arbitrator held that Respondents were jointly and severally liable. (*Id.*) The Arbitrator awarded Collins the following:

- The principal amount of the loan, $245,000;
- A one-time interest payment of $31,850;

3

- Prejudgment interest, from April 5, 2018, at the rate of 13% per annum;
- Administrative costs and fees; and
- Reasonable attorneys' fees of $125,000.

(*Id.* at 26.)[3]

On July 20, 2021, Collins filed the present Petition to Confirm the Arbitration Award in this Court. In response, Respondents filed a Counter-Motion requesting that the Court vacate, or in the alternative, modify, correct, or amend, the Arbitration Award. Collins opposed Respondents' Motion to Vacate, and Respondents replied. (Opp'n Mot. Vacate ("Opp'n"), ECF No. 20; Reply ISO Mot. Vacate, ECF No. 21.)

### III. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA")[4], if a party seeks to have an arbitration award confirmed by a federal court, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. However, judicial review of arbitration awards is "extremely limited" and "highly deferential." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003) (en banc); *Sheet Metal Workers' Int'l Ass'n Loc. Union No. 359 v. Madison Indus., Inc. of Ariz.*, 84 F.3d 1186, 1190 (9th Cir. 1996). Therefore, a court will set aside an arbitrator's decision "only in very unusual circumstances." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).

A district court may vacate an arbitration award under § 10 only where "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual,

---

[3] The Award also noted that, upon Collins's request, "the Respondents shall deliver documentation from which she can perfect a security interest and copyright mortgage in the Film." (Award 25.) The Arbitrator held that the loan is in default and that Collins would be within her rights to foreclose on her collateral. (*Id.*)

[4] Collins and Respondents both rely on the FAA for the relief they seek. (*See* Mot. Vacate 1 (relying on 9 U.S.C. §§ 10–12 to argue the Court should vacate or modify the Award); Pet. Confirm 1 (relying on 9 U.S.C. § 9 to argue the Court should confirm the Award).) Accordingly, the Court applies the FAA.

final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Further, § 10(a)(4) "provides for vacatur only when arbitrators purport to exercise powers that the parties did not intend them to possess or otherwise display a manifest disregard for the law." *Kyocera Corp.*, 341 F.3d at 1002–03.

An arbitrator exceeds her power not by merely interpreting or applying the governing law incorrectly, but when the award is "completely irrational or exhibits a manifest disregard for the law." *Id.* at 998. To vacate an arbitration award for manifest disregard, "[i]t must be clear from the record that the arbitrators recognized the applicable law and then ignored it." *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010) (quoting *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995)). Thus, "[i]t is not enough for petitioners to show that the panel committed an error—or even a serious error." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010).

## IV. DISCUSSION

Collins seeks confirmation of the Arbitration Award, entry of judgment in her favor including pre- and post-judgment interest, and attorneys' fees and costs incurred in this action. (Pet. Confirm 9.) Respondents ask the Court to vacate the Award on the grounds that the Arbitrator exceeded his authority and acted in manifest disregard for the law. (*See* Mot. Vacate 1–2.) However, Respondents' arguments are merely an attempt to appeal the Arbitrator's decision or even seek *de novo* review. The Court lacks such authority. Accordingly, as the Court finds no basis to vacate, modify, or correct the Arbitration Award, the Court confirms the Award.

### A. Motion to Vacate

In seeking vacatur, Respondents argue that the Arbitrator exceeded his authority and manifestly disregarded the law by issuing an award against Rionda, who did not sign the Agreement. (Mot. Vacate 8, 12, 21.) In addition, Respondents contend that the Arbitrator's award of prejudgment interest also reflects a manifest disregard of the law. (*Id.* at 17–20.) The Court addresses each argument in turn.

*1. The Arbitrator's Authority*

Respondents contend that the Arbitrator exceeded his authority in two main ways: first, by issuing an award against Rionda, a nonparty to the Agreement to arbitrate, and second, by finding that Rionda was equitably estopped from challenging the arbitrability of Collins's alter ego claim and holding Rionda liable as the alter ego of HPI and SKP.

"Arbitrators exceed their powers not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational . . . ." *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1177 (9th Cir. 2010) (original alterations omitted). "An arbitrator does not exceed its authority if the decision is a plausible interpretation of the arbitration contract." *Id.* (internal quotation marks omitted). The "completely irrational" standard is "extremely narrow and is satisfied only where the arbitration decision fails to draw its essence from the agreement." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009) (quoting *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461–62 (8th Cir. 2001)). An award "draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions." *Bosack v. Soward*, 586 F.3d 1096, 1106 (9th Cir. 2009) (quoting *McGrann v. First Albany Corp.*, 424 F.3d 743, 749 (8th Cir. 2005)).

First, Respondents contend that the Arbitrator lacked the authority to issue an award against Rionda because he was not a party to the agreement to arbitrate. (*See* Mot. Vacate 8.) This argument fails because all Respondents, including Rionda, had moved to compel Collins to arbitration based on the Agreement's arbitration clause. (*Id.* at 9–10.) Rionda and SKP—both nonsignatories to the Agreement—had urged the court that the claims against them were so intertwined with the arbitrable contract claims that they should be arbitrated together. (Award 3; Arb. Order No. 2 at 99–100.) Thus, Rionda sought to enforce the arbitration clause of the Agreement and the Arbitrator found him equitably estopped from denying arbitrability of the claims

against him. (*See* Award 3.) Given this context, it was not "completely irrational" for the Arbitrator to issue an award against Rionda. *See Bosack*, 586 F.3d at 1106.

Respondents second argument, that the Arbitrator exceeded his authority by finding Rionda equitably estopped from challenging arbitrability and by holding Rionda liable under an alter ego theory, fails for similar reasons. (*See* Award 4; Mot. Vacate 9–16.) As Respondents had previously urged that Collins's claims against them were arbitrable, it was reasonable and rational for the Arbitrator to hold them equitably estopped from later denying arbitrability. *See also Lovret v. Seyfarth*, 22 Cal. App. 3d 841, 860 (1972) ("[A] claimant may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrators to act."). This includes arbitrability of the alter ego claims because the arbitration clause unambiguously delegated issues of arbitrability to the arbitrator. The Agreement expressly provides that "[a]ny dispute, . . . including without limitation tort claims *and arbitrability issues*, shall be submitted to and resolved by binding arbitration." (Agreement ¶ 20 (emphasis added).) Given the clear language of the arbitration clause and the parties' express intention to arbitrate, the challenged arbitral conclusions reflect "a plausible interpretation of the arbitration contract." *U.S. Life Ins. Co.*, 591 F.3d at 1177. As the Arbitrator's decisions drew their essence from the authority conveyed in the delegation clause, *see Bosack*, 586 F.3d at 1106, Respondents fail to demonstrate that the Arbitrator exceeded his authority by holding Rionda liable under an alter ego theory or determining substantive issues of arbitrability.

Ultimately, Respondents' ask this Court to reassess the Arbitrator's legal conclusions. The Court can find no legal basis to do so. "[W]here the question of arbitrability is decided by the arbitrator, we are not at liberty to substitute our own view in place of the arbitrator's regardless of what our view might be of the correctness of the arbitral decision." *George Day Const. Co. v. United Brotherhood of Carpenters & Joiners, Loc. 354*, 722 F.2d 1471, 1476 (9th Cir. 1984). The review

1 Respondents seek is simply inconsistent with the Court's limited role under
2 9 U.S.C. § 10. The Court has no authority to question the Arbitrator's reasoned legal
3 conclusions.[5]

### 2. Prejudgment Interest Rate

Lastly, Respondents argue the Arbitrator manifestly disregarded the law because the award of 13% prejudgment interest violates California law. (Mot. Vacate 17–20.) Respondents also contend the Arbitrator exceeded his authority by awarding 13% prejudgment interest because it is not expressly authorized by the Agreement. (*Id.* at 18.) Respondents' arguments are not persuasive.

To vacate an arbitration award based on a manifest disregard of the law requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law." *Collins*, 505 F.3d at 879 (quoting *San Martine Compania De Navegacion, S.A. v. Saguenay Terminals Ltd.*, 293 F.2d 796, 801 (9th Cir. 1961)). Moreover, a district court may not vacate an arbitration award "even in the face of an erroneous interpretation of the law." *Id.* Rather, "[i]t must be clear from the record that the arbitrators recognized the applicable law and then ignored it." *Lagstein*, 607 F.3d at 642.

Under California law, "[t]he rate of interest upon a judgment rendered in any court of this state shall be set by the Legislature at not more than 10 percent per annum." Cal. Const. art. XV, § 1. The Arbitrator's award of 13% interest thus exceeds the rate permitted. However, Respondents fail to identify anywhere in the record where the Arbitrator "recognized [this] applicable law and then ignored it." *See id.* As such, Respondents fail to demonstrate a manifest disregard for the law. *See*

---

[5] Respondents primarily argue that the Arbitrator exceeded his authority by issuing an award against Rionda, but they also contend this demonstrates a manifest disregard for the law. (*See* Mot. Vacate 9–16.) However, Respondents fail to show that the Arbitrator "underst[oo]d and correctly state[d] the law, but proceed[ed] to disregard the same." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007) (alteration in original). Thus, vacatur is not warranted on this basis, either.

*Kyocera*, 341 F.3d at 994 ("Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award.").

Respondents' argument that the Arbitrator exceeded his authority by awarding 13% prejudgment interest also fails. An arbitrator does not "exceed their powers . . . when they merely interpret or apply the governing law incorrectly." *Kyocera Corp.*, 341 F.3d at 997. Vacatur is not warranted even if the reviewing court "might have interpreted the contract differently." *Bosack*, 586 F.3d at 1106. Rather, the sole question for the court is "whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). Here, the Agreement includes a flat 13% interest rate on the Loan. (Agreement ¶ 2.) It also provides that "the successful or prevailing party or parties shall be entitled to recover from the losing party or parties reasonable attorneys' fees and other costs incurred in that action or proceeding *in addition to any other relief to which it or they may be entitled*." (*See id.* at 30 (emphasis added).) The Arbitrator's award of 13% prejudgment interest was thus an arguable interpretation of the Agreement, whose terms authorize a 13% interest rate and the broadly worded "any other relief" to which the prevailing party may be entitled. As such, the Award did not exceed the Arbitrator's authority pursuant to the Agreement.

Respondents fail to provide grounds to vacate or modify the Award. *See* 9 U.S.C. § 10. Accordingly, Respondents' Motion is **DENIED**.

**B.     Request to Confirm Arbitration Award**

Collins requests that the Court confirm the Arbitration Award and enter Judgment in her favor. (*See* Pet. Confirm.) The FAA mandates that a district court must confirm an arbitration award unless it is "vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Further, this Court may enter judgment because the Arbitration Award issued in this judicial district. *See id.* ("If no court is specified in the agreement of the parties, then such application may be

made to the United States court in and for the district within which such award was made."); (*see also* Pet. Confirm ¶ 4; Pet. Compel). Collins complied with all the statutory conditions for confirming the Arbitration Award and Respondents failed to establish any ground for vacating or modifying it. Accordingly, the Court **GRANTS** Collins's Request and **CONFIRMS** the Arbitration Award.

### C. Interest, Fees, and Costs

Collins also seeks pre- and post-judgment interest and attorneys' fees and costs incurred in this action. (*See* Pet. Confirm ¶¶ 36–38, Prayer ¶¶ a–b.) Respondents dispute only the 13% prejudgment interest figure; they do not oppose Collins's requests for postjudgment interest and attorneys' fees and costs. (*See generally* Mot. Vacate.)

*1. Interest*

As discussed, the Arbitrator awarded Collins 13% prejudgment interest, which was reasonably within his authority and supported by the Agreement.

Next, postjudgment interest on a district court judgment is mandatory. *Lagstein*, 725 F.3d at 1056. "Post-judgment interest should be awarded on the entire amount of the judgment, including any pre-judgment interest," and is typically "awarded from the date of judgment until the judgment is satisfied." *Id.* Postjudgment interest is determined by federal law, *Northrop Corp. v. Triad Int'l Mktg., S.A.*, 842 F.2d 1154, 1155 (9th Cir. 1988), which provides for "a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment," 28 U.S.C. § 1961(a). Accordingly, Collins is entitled to postjudgment interest, at a rate determined pursuant to 28 U.S.C. § 1961(a), from the date Judgment issues in this action until the award is paid in full.

*2. Attorneys' Fees and Costs*

Collins also seeks attorneys' fees and costs incurred in connection with this action. (Pet. Confirm, Prayer ¶ b.) The Agreement expressly authorizes recovery of

these fees and costs. (Agreement ¶ 13.)  The Court agrees with the Arbitrator that attorneys' fees and costs are recoverable.  (*See* Award 21, 26.)

Generally, in assessing attorneys' fees, courts calculate the "lodestar" figure by multiplying the "number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1157 (9th Cir. 2002) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  In determining a reasonable hourly rate, courts consider the experience of the attorneys requesting fees and the prevailing comparable rates in the community.  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986).  District courts may also rely on their own knowledge and experience regarding the legal market. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).  The fee applicant bears the burden of producing evidence that the requested rates are reasonable, and courts may reduce an attorney's fee award where the documentation is lacking.  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008); *Hensley*, 461 U.S. at 433–34.

Here, Collins's counsel, Eric Bensamochan, seeks approval of $695 per hour for 27.7 hours billed on this matter (27.7 x $695 = $19,251.50).  (*See* Decl. Eric Bensamochan ("Bensamochan Decl.") ¶¶ 2–3, ECF No. 20.)  The Court finds that Bensamochan's hourly rate is high and unsupported.  Bensamochan provides no information to establish that the requested rate is appropriate to his skill, experience, or the prevailing market fees.  (*See id.* ¶¶ 1–4.)  In addition, Bensamochan was on notice that he would bear the burden of producing evidence to show that the requested rates are reasonable because the Arbitrator had reduced Bensamochan's requested fees by nearly half due to his failure to provide sufficient evidence.  (*See* Award 26 n.6.)

In 2017, a district court in the Central District of California approved an hourly rate for Bensamochan of $375 per hour, albeit in a bankruptcy proceeding.  *In re La Casa de la Raza, Inc.*, No. 9:16-bk-10331-PC, 2017 WL 3661624, at *7 (Bankr. C.D. Cal. Aug. 21, 2017).  Bensamochan has not provided any information to explain or support a $320 increase in his hourly rate since 2017.  Considering the intervening

years and the Court's familiarity with the legal market, and in view of Bensamochan's failure to support the requested rate, the Court concludes that an hourly rate of $425 is reasonable. *See In re City of Redondo Beach FLSA Litig.*, No. 2:17-cv-09097-ODW (SKx), 2021 WL 5493978, at *5 (C.D. Cal. Nov. 23, 2021) (approving a $25 increase in hourly rate for an additional three years of experience). In contrast to the failure of proof regarding his rate, Bensamochan provides adequate support that the claimed 27.7 hours were reasonably expended. Thus, the Court **AWARDS attorneys' fees** of **$11,772.50** ($425 x. 27.7).

## V. CONCLUSION

As the Court finds no basis to vacate, modify, or correct the Arbitration Award, the Court must confirm it. 9 U.S.C. § 9. Accordingly, the Court **GRANTS** Collins's Petition to Confirm Arbitration Award (ECF No. 1) and **DENIES** Respondents' Motion to Vacate the same (ECF No. 18). The Court **GRANTS** Collins's request for pre- and post-judgment interest and **AWARDS** Collins attorneys' fees of **$11,772.50**. **Collins shall submit a Proposed Judgment**, including applicable rates of interest, **no later than fourteen days** after the date of this Order.

**IT IS SO ORDERED.**

January 7, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**